UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE – OPELOUSAS DIVISION

| | |
|---|---|
| PAUL NELSON, INDIVIDUALLY AND ON BEHALF OF HIS DECEASED WIFE, ROBERTA NELSON; KATHRYN NELSON LESTER; and CHRISTOPHER NELSON | DOCKET NO. 6:10-cv-0591 (LEAD) 6:10-cv-0592 (MEMBER) |
| VERSUS | JUDGE DOHERTY |
| MYLAN PHARMACEUTICALS, INC., MYLAN, INC., and MYLAN TECHNOLOGIES, INC. | MAGISTRATE JUDGE HANNA |

**REPORT AND RECOMMENDATION**
(Rec. Doc. 6 & Rec. Doc. 22)

Pending before the court, in these two consolidated lawsuits, are the defendants' motions to dismiss the claims asserted against them. The defendants seek dismissal of all claims falling beyond the scope of the Louisiana Products Liability Act ("LPLA") pursuant to the exclusivity provision of the LPLA, and they seek dismissal of the LPLA claim for failure to satisfy the applicable pleading requirements. The plaintiffs oppose the motions (Rec. Docs. 9, 18, 27, 30).

For the reasons fully explained below, it is recommended that: (a) the defendants' first motion to dismiss (Rec. Doc. 6) be denied as moot; (b) the defendants' second motion to dismiss (Rec. Doc. 22) be granted with regard to the

plaintiffs' non-LPLA claims (except to the extent that their redhibition claim seeks economic damages not cognizable under the LPLA); and (c) the defendants' second motion to dismiss (Rec. Doc. 22) be denied with regard to the plaintiffs' LPLA claim.

## FACTUAL AND PROCEDURAL BACKGROUND

This litigation arises out of the death of Roberta Nelson on or about March 6, 2009. The litigation commenced when the plaintiffs, Mrs. Nelson's widower and their two children, filed two state-court lawsuits in the 15th Judicial District Court, one in Lafayette Parish, Louisiana, and the other in Vermilion Parish, Louisiana. The two state-court petitions are identical.[1] The defendants removed both state-court proceedings to this Court.[2] The suit originally filed in Vermilion Parish was assigned Docket No. 10-cv-0591, and the suit originally filed in Lafayette Parish was assigned Docket No. 10-cv-0592. In a minute entry, the District Judge advised that the suits should be consolidated,[3] and this was eventually accomplished.[4]

---

[1] Copies of the petitions filed in those lawsuits are found in Rec. Doc. 1-1 in Docket No. 10-cv-0591 and also in Rec. Doc. 1-1 in Docket No. 10-cv-0592.

[2] Rec. Doc. 1 in Docket No. 10-cv-0591 and Rec. Doc. 1 in Docket No. 10-cv-0592.

[3] Rec. Doc. 4 in Docket No. 10-cv-0591; Rec. Doc. 5 in Docket No. 10-cv-0592.

[4] Rec. Doc. 9 (in Docket No. 10-cv-0591) and Rec. Doc. 29 (in Docket No. 10-cv-0592).

In Docket No. 10-cv-0592, the defendants filed a motion to dismiss and, noting the proposed consolidation of the cases, explained that they desired for the motion to be considered equally applicable to Docket No. 10-cv-0591.[5] The plaintiffs filed an opposition memorandum,[6] but they also filed a motion for leave to file an amended petition.[7] That motion was granted,[8] and the plaintiffs' first supplemental and amending petition for damages was filed.[9] Although the supplemental petition was filed only in Docket No. 10-cv-0592, the undersigned considers the supplemental petition as being applicable in both consolidated lawsuits.

Considering their first motion to dismiss (Rec. Doc. 6) to be moot as a result of the plaintiffs' filing their first supplemental and amending petition,[10] the defendants filed a second motion to dismiss (Rec. Doc. 22), which expressly addressed the plaintiffs' supplemental petition.[11] The undersigned concurs with the

---

[5] Rec. Doc. 6-1 at 2.

[6] Rec. Doc. 6.

[7] Rec. Docs. 6-1, 13.

[8] Rec. Doc. 15.

[9] Rec. Doc. 16.

[10] Rec. Doc. 22-1 at 2.

[11] Rec. Doc. 22.

defendants' assessment and recommends that the first motion to dismiss (Rec. Doc. 6) be dismissed as moot.

Therefore, now pending before this Court is the more recent motion to dismiss (Rec. Doc. 22), which was technically filed only in Docket No. 10-cv-0592 but which the undersigned considers to be equally applicable to the allegations asserted in both consolidated lawsuits.

In their supplemental petition, the plaintiffs allege that the defendants, Mylan Pharmaceuticals, Inc., Mylan, Inc., and Mylan Technologies (collectively "Mylan") are the manufacturers of a medication known as the Fentanyl Transdermal System or the fentanyl patch.[12] They allege that fentanyl is stronger than morphine, that the fentanyl patch is applied by the patient, and that the patch delivers fentanyl through the patient's skin.[13] They further allege that Dr. M. Mitchell of Maurice, Louisiana prescribed the fentanyl patch to Mrs. Nelson for problems she was having with pain.[14] The plaintiffs allege that Mrs. Nelson never abused the fentanyl patch or used it

---

[12]  Rec. Doc. 16 at ¶2.

[13]  Rec. Doc. 16 at ¶7B.

[14]  Rec. Doc. 16 at ¶4, 5.

inappropriately. In other words, they claim that she used the patch for its intended purpose and in a reasonably anticipated manner.[15]

On or about March 5, 2009, Mrs. Nelson allegedly experienced cardiopulmonary arrest.[16] Efforts were made to resuscitate her, but she died the next day.[17] Blood tests allegedly revealed that she had a lethal dose of fentanyl in her system along with other opiates.[18] The plaintiffs allege that the fentanyl patch is an unreasonably dangerous product,[19] and that the fentanyl patch can, and did in the case of Mrs. Nelson, deliver a lethal dose of medication.[20] The plaintiffs claim that Mrs. Nelson's death and their associated injuries were caused by Mrs. Nelson's use of the fentanyl patch.[21]

Mrs. Nelson's widower and their children now seek to recover for Mrs. Nelson's allegedly wrongful death; for her survival between the onset of symptoms and her death; for past and future health care expenses; for past, present, and future

---

[15] Rec. Doc. 16 at ¶7B.

[16] Rec. Doc. 16 at ¶6.

[17] Rec. Doc. 16 at ¶6.

[18] Rec. Doc. 16 at ¶7A.

[19] Rec. Doc. 16 at ¶18.

[20] Rec. Doc. 16 at ¶7C.

[21] Rec. Doc. 16 at ¶¶9, 16, 21.

pain and suffering, emotional distress, mental anguish, and loss of consortium damages; and also for lost income, support, and earning potential.[22]

## ANALYSIS

The defendants seek dismissal of the plaintiffs' non-LPLA claims under the LPLA's exclusivity provision. They seek dismissal of the plaintiffs' LPLA claim under the applicable pleading requirements.

### I.     THE APPLICABILITY OF SUBSTANTIVE LOUISIANA LAW

These consolidated lawsuits were removed from state court on the basis of diversity jurisdiction. Federal courts sitting in diversity apply state substantive law and federal procedural law.[23] The plaintiffs' supplemental petition expressly asserts claims under Louisiana law, and the defendants address the plaintiffs' claims in terms of Louisiana law, thus implicitly agreeing that the substantive law of Louisiana

---

[22]    Rec. Doc. 16 at ¶21.

[23]    *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 206 (5th Cir. 2007); *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996); see also *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

applies to the dispute presented in these consolidated lawsuits.[24] Therefore, substantive Louisiana law applies.

## II. THE NON-LPLA CLAIMS ARE BARRED BY THE LPLA'S EXCLUSIVITY PROVISION

The defendants' first contention is that all claims asserted by the plaintiffs that are beyond the scope of the Louisiana Products Liability Act ("LPLA"), La. R.S. 9:2800.51 *et seq.*, should be dismissed pursuant to the LPLA's exclusivity provision. The LPLA expressly provides "the exclusive theories of liability for manufacturers for damage caused by their products."[25] Thus, "a claimant may not recover from a manufacturer for damage caused by a product on the basis of any theory of liability that is not set forth in [the LPLA]."[26]

The LPLA states that a manufacturer of a product is liable to a claimant for damage proximately caused by a characteristic of the product that rendered it unreasonably dangerous when the damage arose from a reasonably anticipated use of

---

[24] See, *In re Katrina*, 495 F.3d at 206 (deferring to the parties' agreement that Louisiana substantive law controlled); *Jefferson v. Lead Industries Ass'n*, 106 F.3d 1245, 1250 (5th Cir. 1997) (applying Louisiana law because no party disputed that Louisiana law governed).

[25] La. R.S. 9:2800.52.

[26] La. R.S. 9:2800.52.

the product by the claimant or another person or entity.[27] A claimant may prove that the product was unreasonably dangerous only if it was unreasonably dangerous: (1) in construction or composition; (2) in design; (3) because of inadequate warning; or (4) because of nonconformity to an express warranty.[28] Thus, the elements of a products liability cause of action under the LPLA are: (1) that the defendant is a manufacturer of the product; (2) that the claimant's damage was proximately caused by a characteristic of the product; (3) that the characteristic made the product unreasonably dangerous in one of the four ways provided in the statute; and (4) that the claimant's damage arose from a reasonably anticipated use of the product.[29]

Here, the plaintiffs allege that Mylan manufactured the fentanyl patch that allegedly resulted in the death of Mrs. Nelson,[30] they allege that the patch was unreasonably dangerous,[31] and they seek to recover damages for the injuries allegedly sustained as a result of Mrs. Nelson's use of the patch.[32] Therefore, the

---

[27] La. R.S. 9:2800.54(A).

[28] La. R.S. 2800.54(B).

[29] La. R.S. 2800.54. See, also, *Jefferson v. Lead Industries*, 106 F.3d at 1251; J. Kennedy, A Primer on the Louisiana Products Liability Act, 49 La. L. Rev. 565 (1989) (hereafter "Kennedy").

[30] Rec. Doc. 16 at ¶¶2, 3.

[31] Rec. Doc. 16 at ¶18.

[32] Rec. Doc. 16 at ¶19, 21.

LPLA governs and "every claim asserted by [the plaintiffs] must fall into one of the four exclusive theories of recovery listed above."[33] In addition to seeking recovery under the LPLA, however, the plaintiffs also assert a negligence claim,[34] claims for fraud and/or misrepresentation,[35] and a redhibition claim.[36]

Louisiana courts have held that "the LPLA subsumes all possible causes of action [against a manufacturer] with the exception of redhibition,"[37] and numerous decisions from Louisiana courts have enforced the statute's exclusivity provision.[38] Thus, the LPLA's exclusivity provision bars a plaintiff from asserting an independent claim for negligence or strict liability since such causes of action are no longer viable

---

[33] *Lewis v. Pfizer Pharmaceutical Co., Inc.*, 2010 WL 2545195, 2 (W.D. La. 2010).

[34] Rec. Doc. 16 at ¶12A, 15.

[35] Rec. Doc. 16 at ¶¶8, 12B, 17.

[36] Rec. Doc. 16 at ¶17. Although the plaintiffs erroneously reference Civil Code Article 2525, which is reserved, the undersigned assumes that they meant to assert a redhibition claim since Article 2525 is located within the chapter pertaining to redhibition.

[37] *Touro Infirmary v. Sizeler Architects*, 2004-2210 (La. App. 4 Cir. 11/21/06), 947 So.2d 740, 744.

[38] See, e.g., *Cooper v. Wyeth, Inc.*, 2010 WL 2653321 (M.D. La. 2010) (dismissing fraud, negligence, negligent misrepresentation, misrepresentation, breach of implied warranty, and punitive damages claims); *Lewis v. Pfizer Pharmaceutical Co., Inc.*, 2010 WL 2545195 (W.D. La. 2010) (dismissing fraudulent misrepresentation and negligence claims); *Boudreaux v. Deutz Corp.*, 2010 WL 1838650 (E.D. La. 2010) (dismissing negligence and negligent misrepresentation claims); *Ivory v. Pfizer Inc.*, 2009 WL 3230611 (W.D. La. 2009) (dismissing breach of implied warranty, punitive damages, and negligent infliction of emotional distress claims); *Brennon v. Pfizer Inc.*, 2009 WL 2525180 (W.D. La. 2009) (dismissing strict liability, negligence, gross negligence, and breach of express warranty claims).

independent theories of recovery against a manufacturer.[39] Louisiana courts have also interpreted the LPLA as preserving redhibition as a cause of action only to the extent that the claimant seeks to recover the value of the product or other economic loss.[40] Thus, the LPLA's exclusivity provision bars all of the plaintiffs' claims beyond the scope of the LPLA except for any claim that the plaintiffs may have in redhibition for economic loss only.

Therefore, it is recommended that the defendants' motion be granted with regard to all claims asserted by the plaintiffs that are beyond the scope of the LPLA.

### III. THE STANDARD FOR ANALYZING A RULE 12(B)(6) MOTION TO DISMISS

---

[39] *Stahl v. Novartis Pharmaceuticals Corp.*, 283 F.3d 254, 261 (5th Cir. 2002); *Jefferson v. Lead Industries*, 106 F.3d at 1251, citing *Automatique New Orleans, Inc. v. U-Select-It, Inc.*, 1995 WL 491151 at 3, n. 2 (E.D. La. 1995) (no independent negligence claim); *Hopkins v. NCR Corp.*, 1994 WL 757510 at 1-2 (M.D. La. 1994) (strict liability under Civil Code Article 2317 not cognizable theory against manufacturer); Kennedy, supra, at 589-90.

[40] *De Atley v. Victoria's Secret Catalogue, LLC*, 2004-0661 (La. App. 4 Cir. 05/14/04), 876 So.2d 112, 115, citing *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 251 (5th Cir. 2002); Thomas C. Galligan, Jr., Contortions Along the Boundary Between Contracts and Torts, 69 Tulane L. Rev. 457, 489-91 (1994). See, also, *Jefferson v. Lead Industries*, 106 F.3d at 1251; Kennedy, supra, at 588.

The defendants' second contention is that the plaintiffs' LPLA claim should be dismissed because the plaintiffs have pled an insufficient factual foundation for that claim.

A motion to dismiss for failure to state a claim, under Rule 12(b)(6) of the Federal Rules of Civil Procedure, is appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim.[41] Rule 12(b)(6) motions to dismiss are disfavored and should be denied unless the moving party can show that the plaintiff cannot prove a plausible set of facts in support of his claim that would entitle him to relief.[42]

To survive a Rule 12(b)(6) motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."[43] The plaintiff's obligation is "to provide the 'grounds' of his 'entitle[ment] to relief' [and] requires more than labels and conclusions."[44] The allegations must be sufficient "to raise a right to relief above the speculative level,"[45] and "the pleading must contain something more... than... a statement of facts that merely creates a suspicion [of] a legally cognizable right of

---

[41] *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

[42] *Bell Atlantic Corp. v. Twombly*, 550 U.S.544, 570 (2007).

[43] *Bell Atlantic v. Twombly*, 550 U.S. at 570.

[44] *Bell Atlantic v. Twombly*, 550 U.S. at 555, citing *Papasan v. Allain*, 478 U.S. at 286.

[45] *Bell Atlantic v. Twombly*, 550 U.S. at 555.

action."[46] Detailed factual allegations are not required, but a formulaic recitation of the elements of a cause of action will not suffice.[47] If the plaintiff fails to allege facts sufficient to "nudge[ ][his] claims across the line from conceivable to plausible, [his] complaint must be dismissed."[48]

A claim meets the test for facial plausibility "when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[49] Furthermore, "determining whether a complaint states a plausible claim for relief... [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[50]

The Fifth Circuit in *Lormand v. US Unwired, Inc.,* 565 F.3d 228 (5th Cir 2009), succinctly explained the "plausibility" standard of pleading applied to Fed. R. Civ. P. 8(a)(2) as follows:

> The complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim. "Asking for [such] plausible

---

[46] *Bell Atlantic v. Twombly*, 550 U.S. at 555, quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004).

[47] *Bell Atlantic v. Twombly*, 550 U.S. at 555 (citations, quotation marks, and brackets omitted) (emphasis added). See, also, *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1950 (2009).

[48] *Bell Atlantic v. Twombly*, 550 U.S. at 570.

[49] *Ashcroft v. Iqbal*, 129 S.Ct. at 1949.

[50] *Ashcroft v. Iqbal*, 129 S.Ct. at 1950.

grounds to infer [the element of a claim] *does not impose a probability requirement* at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal [that the elements of the claim existed]'[51]

Therefore, once the plaintiffs' factual allegations are identified, the court must draw on its judicial experience and common sense and determine whether those facts, which need not be detailed or specific, allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[52]   This analysis does not foreclose the option that discovery must be undertaken in order to raise relevant information to support an element of the claim if there is a "reasonable expectation" discovery will reveal that evidence.[53]

## IV.   SUFFICIENT FACTS SUPPORT THE LPLA CLAIM

With the foregoing standard in mind, the facts set forth in the plaintiffs' amended petition must be analyzed. To prevail on an LPLA claim, the plaintiff "must establish four elements:  (1) that the defendant is a manufacturer of the product; (2) that the claimant's damage was proximately caused by a characteristic of the product;

---

[51]   *Lormand,* at 257, quoting *Twombly,* 550 U.S. at 556, 127 S.Ct. At 1965, see also *In Re Southern Scrap*, 541 F.3d 584, 587 (5th Cir. 2008) quoting *Twombly.*

[52]   *Ashcroft v. Iqbal*, 129 S.Ct. at 1949, *Bell Atlantic v. Twombly*, 550 U.S. at 556.

[53]   *Lormand, 565 F.3d at 257.*

(3) that this characteristic made the product 'unreasonably dangerous;' and (4) that the claimant's damage arose from a reasonably anticipated use of the product by the claimant or someone else."[54] The plaintiffs' complaint contains sufficient factual allegations to survive the defendants' motion.

First, the plaintiffs expressly allege that Mylan manufactured the fentanyl patch.[55] This factual allegation is accepted as true and apparently is not contented by the defendants. The first element is satisfied.

Second, the plaintiffs expressly allege that Mrs. Nelson was injured and subsequently died as a result of her use of the fentanyl patch, which allegedly delivered an overdose of medication.[56] Taken as true as it must be for purposes of this motion, this allegation satisfies the second element.

Third, the plaintiffs allege that Mrs. Nelson was prescribed the patch by her physician as a treatment for pain symptoms, and that she did not abuse the patch.[57] This alleges that her use of the patch was one reasonably anticipated by the manufacturer. Accepted as true, this allegation satisfies the fourth element.

---

[54] *Stahl v. Novartis*, 283 F.3d at 260-61; La. R.S. 9:2800.54(A).

[55] Rec. Doc. 16 at ¶2, 3, 10, 12.

[56] Rec. Doc. 16 at ¶7, 8, 9, 19, 21.

[57] Rec. Doc. 16 at ¶4, 5, 7B.

Remaining is the third element – that a characteristic of the product made it unreasonably dangerous in design, in composition or construction, because of inadequate warnings, or because an express warning was breached. The plaintiffs allege that the patch delivered a dosage of medication beyond that intended,[58] that the product was inadequately tested,[59] and that the product was known to have significant potential side effects.[60] Taken as true at they must be in resolving the instant motion, these factual allegations support a reasonable inference that the defendants' product was either improperly designed or improperly constructed or composed. Therefore, the plaintiffs have alleged a factual basis for two of the four ways that a product can be shown to be unreasonably dangerous under the LPLA.

The plaintiffs also allege that the defendants failed to adequately warn physicians and the general public of the dangers of the fentanyl patch and its potential side effects.[61] "To successfully maintain a failure-to-warn claim under the LPLA, a plaintiff must demonstrate that the product in question has a potentially damage-causing characteristic and that the manufacturer failed to use reasonable care

---

[58]  Rec. Doc. 16 at ¶7C.

[59]  Rec. Doc. 16 at ¶13.

[60]  Rec. Doc. 16 at ¶ 11, 12A and 15.

[61]  Rec. Doc. 16 at ¶7C, 12B, and 14.

to provide an adequate warning about this characteristic."[62] The defendants also argue that, under the "learned intermediary doctrine," a drug manufacturer discharges its duty to consumers by providing warnings to prescribing physicians.[63] The plaintiffs allege that the fentanyl patch injured Mrs. Nelson by delivering a dosage of medication beyond that intended,[64] that the defendants failed to provide timely and adequate warnings after they knew of risks presented by the patch,[65] and that those warnings should have been provided to *physicians* and the general public.[66] These allegations, taken as true, are sufficient to support a failure-to-warn claim at this stage of the litigation.

Taken as a whole, the plaintiffs' allegations placed the defendants on notice that there is a claim against them under the LPLA. Further, plaintiffs' allegations notified the defendants of the grounds on which the LPLA claim is based because the supplemental complaint states, with sufficient detail, that (1) the defendants are the manufacturers of a product, (2) the product has a characteristic that damaged the plaintiffs, (3) the characteristic made the product unreasonably dangerous, either in

---

[62] *Stahl v. Novartis*, 283 F.3d at 264.

[63] Rec. Doc. 22-1 at 7.

[64] Rec. Doc. 16 at ¶7C.

[65] Rec. Doc. 16 at ¶14.

[66] Rec. Doc. 16 at ¶12B.

design, construction or composition, or because of inadequate warnings, (4) while the product was being used in a reasonably anticipated manner. Further, there is a reasonable expectation that discovery will reveal evidence concerning the applicability of the "learned intermediary doctrine," alternative product designs, and such other elements as are implicated by a products liability claim. It is enough, at this point, that the plaintiffs alleged, in sufficient detail, facts that make out the essential elements of their LPLA claim. Sufficient facts were alleged in the supplemental petition to satisfy the pleading standard.[67]

Therefore, it is recommended that, with regard to the plaintiffs' claims arising under the LPLA – and only to the extent that the claims are viable under the LPLA – the defendants' motion should be denied.

## CONCLUSION AND RECOMMENDATION

For the reasons set forth above, the undersigned finds that the motions to dismiss filed by the defendants in Docket No. 10-cv-0592 are applicable to the petition filed in Docket No. 10-cv-0591 and to the petition filed in Docket No. 10-cv-0592; that the plaintiffs' amendment of their original petition mooted the defendants'

---

[67] For cases reaching a similar conclusion, see, e.g., *Cooper v. Wyeth, Inc.*, 2010 WL 2653321 (M.D. La. 2010); *Waguespack v. Plivia USA, Inc.*, 2010 WL 1086882 (E.D. La. 2010); *Brennon v. Pfizer Inc.*, 2009 WL 2525180 (W.D. La. 2009).

original motion to dismiss; that substantive Louisiana law applies to the resolution of the dispute presented in this lawsuit; that the LPLA governs the plaintiffs' claims against the defendants; that the plaintiffs' claims that are beyond the scope of the LPLA, to the extent they do not include damages in redhibition for economic loss, are not viable; and that the plaintiffs have pled sufficient facts concerning their LPLA claim to withstand the defendants' motion to dismiss.

Accordingly, it is RECOMMENDED that the defendants' first motion to dismiss (Rec. Doc. 6) be DISMISSED AS MOOT.

It is further RECOMMENDED that the defendants' second motion to dismiss (Rec. Doc. 22) is GRANTED with regard to all claims asserted by the plaintiffs that are beyond the scope of the LPLA and that do not include claims in redhibition for economic losses .

It is further RECOMMENDED that the defendants' second motion to dismiss (Rec. Doc. 22) is DENIED with regard to the plaintiffs' LPLA claim.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b) of the Federal Rules of Civil Procedure, parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections

within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plan error. See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Signed at Lafayette, Louisiana, this 3rd day of August, 2010.

Patrick J. Hanna
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)